1  Seth M. Lehrman (178303)
   seth@epllc.com
2  EDWARDS POTTINGER LLC
   425 North Andrews Avenue, Suite 2
3  Fort Lauderdale, FL 33301
   Telephone:  954-524-2820
4  Facsimile:  954-524-2822

5  Ronald J. Eisenberg (*Pro Hac Vice*)
   reisenberg@sl-lawyers.com
6  SCHULTZ & ASSOCIATES LLP
   640 Cepi Drive, Suite A
7  Chesterfield, MO 63005
   Telephone: 636-537-4645
8  Facsimile: 636-537-2599

9  *Attorneys for Plaintiff*
   *Joan Spencer-Ruper, assignee of Retina Associates*
10 *Medical Group, Inc.*

11                **UNITED STATES DISTRICT COURT**
12                **CENTRAL DISTRICT OF CALIFORNIA**
                        **SOUTHERN DIVISION**
13

| | |
|---|---|
| 14 **JOAN SPENCER-RUPER, assignee of RETINA ASSOCIATES MEDICAL GROUP, INC., individually and on behalf of all others similarly situated,** | **CASE NO.  8:19-cv-01709-DOC-ADS** |
| | **CLASS ACTION** |
| **Plaintiff,** | |
| **v.** | **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD** |
| **SCIENTIAE, LLC, et al.,** | Judge:    David O. Carter |
| **Defendants.** | |
| | Date:        September 27, 2021 |
| | Time:        8:30 A.M. |
| | Courtroom:    9 D |
| | [Filed and Served Concurrently with Proposed Order] |

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, conferred pertaining to the subject matter of the instant motion. Defendants do not oppose this motion.

Date: August 5, 2021                    **EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
     SETH M. LEHRMAN
     Attorney for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................1

I. INTRODUCTION ..................................................................................1

II. STATEMENT OF FACTS ......................................................................2

   A. Factual Background ........................................................................2

   B. Proceeds To Date ..........................................................................3

     1.   Litigation ................................................................................3

     2.   Mediation and Continued Negotiations ................................4

III. ARGUMENT ........................................................................................4

   A. The Requested Fee Award Is Fair, Reasonable and Justified ........4

     1.   The Settlement resulted from arm's-length negotiations with no collusion ................................................................5

     2.   The requested fees are reasonable, fair, and justified under the percentage-of-the-fund method ........................................7

        a. Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases ..............7

        b. The risks of litigation support the requested fees ................9

        c. The skill required and quality of work performed support the requested fees ............................................................10

        d. Class Counsel's undertaking of this case on a contingency-fee basis supports the requested fees ...............................12

     3. The requested fee is reasonable, fair, and justified under the lodestar method ................................................................13

        a. Class Counsel's lodestar is reasonable ...............................13

        b. Class Counsel's hourly rates are reasonable .......................14

   B. The Requested Costs and Expenses Are Fair and Reasonable .....16

**IV. CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD** ........................................................................................**16**

**V. CONCLUSION** ..............................................................................**17**

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245(N.D. Cal. Mar. 20, 2015) ..16

4

*Blum v. Stevenson*, 465 U.S. 886 (1994) ................................................14

5

*Davis v. City and County of San Francisco*, 976 F.3d 1536 (9th Cir. 1992) .........14

6

*Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002) ...................13

7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................2, 13

8

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ......................................15

9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .............................................................7

10

*Hogue v. YRC, Inc.*, No. EDCV 16-01338-CJC(JEMx)(C.D. Ca. June 24, 2019)..17

11

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..............5

12

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........16

13

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996)............16

14

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) ...............................5

15

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................. *passim*

16

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)...............16

17

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act*
   *(FACTA) Litigation*,  295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) .........................16

18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th  Cir. 1994) ................................................................12

19

20

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) .............................13

21

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J.  Sept. 14, 2009) ..........6

22

*Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391-392 (1970)...............................16

23

*Pederson v. Airport Terminal Servs.*,
   No. 15-cv-02400, 2018 WL 2138457 (C.D. Cal. Apr. 5, 2018)...........................6

24

*POM Wonderful, LLC v. Purely Juice, Inc.,*
   *2008 WL 4351842 (C.D. Cal 2008)* ...................................................15

25

26

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982)................................................14

27

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................5

28

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).......................... *passim*

*Wright v. Randstad US, LP,*
   No. SACV 8:13-cv-00815-CJC-AGR (C.D. Ca. Sept. 15, 2016) ......................17

**Statutes**

47 U.S.C. § 227 ........................................................................ *passim*

**Other Authorities**

2 McLaughlin on Class Actions (8th ed.) .................................................6

Federal Judicial Center, Manual for Complex Litigation (4th Ed. 2004) ................7

**Rules**

Fed. R. Civ. P. 23(h) ..............................................................1, 5, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Joan Spencer-Ruper, assignee of Retina Associates, Inc. ("Plaintiff"), moves for an award of attorneys' fees, litigation costs, and an incentive award as part of this class action settlement with Defendants Scientiae, LLC, and Montefiore Medicine Academic Health System, Inc., f/k/a Albert Einstein College of Medicine, Inc., d/b/a Albert Einstein College of Medicine ("Defendants"), which the Court preliminarily approved.  (ECF No. 59.)

Under the Settlement Agreement ("Settlement"), Defendants agreed to establish a $350,000 Settlement Fund to fund (1) Settlement Administration Costs; (2) attorneys' fees, costs, and expenses to Class Counsel, as approved by the Court; (3) an incentive award, if any, to Plaintiff; (4) Class recovery on a pro rata basis up to $500 each to Class Members who submit a Valid Claim Form; and (5) any *cy pres* distribution.  (Settlement (ECF No. 53-1) § 10.37.)  In an effort to increase the number of valid claims, the Parties filed, and the Court approved, a Stipulation to extend the class notice deadlines and other deadlines, and to permit sending additional class notice by facsimile and to contact class members by telephone. (ECF Nos. 64 at 3, 65.)

In the preliminary approval motion, Plaintiff indicated that Class Counsel would request a Class Representative Award of $5,000 for Plaintiff and that Class Counsel intended to apply for an award of attorneys' fees of $87,500 (i.e., 25% of the $350,000 Settlement Fund), plus costs and expenses.  (ECF No. 53 at 18-33.) On March 19, 2021, the Court granted preliminary approval of the Settlement, after conducting an analysis under Rule 23 of the Federal Rules of Civil Procedure.  (ECF No. 59.)

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  As noted by

Plaintiff's Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class, which was approved by this Court, the Settlement resulted from extensive arm's-length negotiations, without collusion, with the assistance of a Panel Mediator in Los Angeles, California. (ECF No. 53 at 14-15) The arm's-length negotiations serve as "independent confirmation" of the reasonableness of the Settlement's terms including the attorneys' fees, costs, and incentive award now sought. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Under these circumstances, the Court may give deference to the judgment of the parties regarding the reasonableness of the requested fees.

The reasonableness of the requested fees is also supported by the "percentage-of-the-fund" and "lodestar" approach. The $87,500 in attorneys' fees sought equates to 25% of the $350,000 Settlement Fund, which is equals the Ninth Circuit's benchmark percentage of 25% for attorneys' fee awards in common-fund cases. Additionally, as of August 5, 2021, Class Counsel incurred a combined total of 175.9 hours litigating this action to date, for a combined lodestar of 99,517.50, not including further work to be done, including the final approval hearing. Through this brief, which is unopposed by Defendants, Plaintiff seeks Court approval of the agreed-upon costs and fees as follows: (1) all settlement administration costs, estimated to be $21,357.00,[1] to be paid to the Settlement Administrator; (2) attorneys' fees of $87,500; and (3) litigation costs totaling $3,874.73. As more thoroughly stated herein and as detailed in the supporting declarations, these sums are fair and reasonable as they resulted from extensive arm's-length negotiations and are further supported by the percentage-of-the-fund and loadstar methodologies.

## II.   STATEMENT OF FACTS

### A.   Factual Background

Retina Associates Medical Group, Inc., was a small, California ophthalmologic practice with its principal place of business in Orange County.

---

[1] Plaintiff will provide an updated number prior to the final approval hearing.

(Lehrman Decl. ¶ 27, attached as **Exhibit A**.)   Joan Spencer-Ruper is the assignee of Retina Associates Medical Group, Inc.'s claim and has been the main party contact in this case from its inception. (*Id.*   ¶ 28.)   Scientiae, LLC, is a company that puts on live educational programs, including ones offering continuing education (CE) credits. (*Id.* ¶ 29.)   Montefiore Medicine Academic Health System, Inc., f/k/a Albert Einstein College of Medicine, Inc., d/b/a Albert Einstein College is a medical school that used to be part of Yeshiva University in New York. (*Id.* ¶ 30.)   In 2019, Defendants sent or caused to be sent to 931 Class Members fax advertisements for a May 2019 medical education event.

Plaintiff alleged that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending to Plaintiff and the Class unsolicited fax advertisements that lacked proper opt-out notices. (ECF No. 36 at 4-7.)   Plaintiff contended that Plaintiff and the Class are entitled to statutory damages under the TCPA. (*Id.* at 12.)   Defendants vigorously denied that they violated the TCPA and pleaded numerous affirmative defenses. (ECF No. 40 at 6-10.)

**B.**   **Proceedings to date.**

**1.**   **Litigation.**

In September 2019, a few months after having received a fax advertising a medical education event, Plaintiff filed a Class Action Junk-Fax Complaint, alleging both non-willful and willful violations of the TCPA based on unsolicited facsimile advertisements. (ECF Nos. 1 & 1-1.)   Plaintiff sought $500 per non-knowing or non-willful violation and $1,500 for each knowing or willful violation. (ECF No. 1 at 12-13.)   Plaintiff's claim was brought on behalf of a class of individuals who allegedly received similar unsolicited facsimile advertisements from Defendants. (ECF No. 1.)

In January 2020, Defendants answered and asserted twenty-four affirmative defenses. (ECF No. 16 at 6-11.)   Simultaneously, they moved to strike the complaint for allegedly containing failsafe class allegations. (ECF No. 17.)   The Court then

issued an order setting a scheduling conference.  (ECF No. 21.)  Plaintiff thereafter filed a first amended complaint, rewording the Class definition.  (ECF No. 23 at 8 ¶ 43.)   Defendants then moved to strike the amended complaint for allegedly containing failsafe class allegations.  (ECF No. 25.)  The Court denied as moot Defendants' original motion to strike class allegation.  (ECF No. 26.)

The case moved forward, and in February 2020, Plaintiff served Defendants with separate requests for production of documents, interrogatories, and requests for admissions.  In March, the Parties submitted a Joint Rule 26(f) Report.  (ECF No. 27.)  With consent of Defendants, Plaintiff then filed a second amended complaint, seeking the same relief as previously.  (ECF Nos. 36-37.)   Defendants again answered, this time asserting additional affirmative defenses.  (ECF No. 40 at 6-11.)

### 2. <u>Mediation and Continued Negotiations.</u>

In April 2020, the Court referred the case to the Court Mediation Panel and issued a scheduling order.  (ECF Nos. 42-43.)  On June 1, the Parties engaged in video-conferenced mediation before Panel Mediator Stacie Feldman Hausner, Esq., in Los Angeles, and made progress toward a settlement.  (ECF No. 45; Lehrman Decl. ¶ 25.)  Building on that progress, the Parties continued to negotiate for many months, and in February 2021 finalized the Agreement.  (Lehrman Decl. ¶ 25.)

On February 16, 2021, Plaintiff moved for preliminary approval of the class action settlement and certification of the Settlement Class.  (ECF No. 53.)  On March 19, the Court granted Plaintiff's motion.  (ECF No. 59.)

## III.   <u>ARGUMENT</u>

Class Counsel respectfully assert that (a) the requested fee award of $87,500 is fair, reasonable, and justified, as is (b) $3,874.73 in costs and expenses.  (Lehrman Decl. ¶¶ 40-44; Eisenberg Decl. ¶¶ 41-44, attached as **Exhibit B**).

### A.   <u>The Requested Fee Award Is Fair, Reasonable and Justified</u>

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are

authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). In common fund cases, Courts within the Ninth Circuit have discretion to use one of two methods to determine whether the fee request is reasonable: (1) percentage-of-the-fund; or (2) lodestar plus a risk multiplier. *Id.* at 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Class Counsel submit that the requested fees are fully supported under both the percentage-of-the-fund and under the lodestar approach, which, due to the amount of work done in this case, would result in a *negative* lodestar multiplier.

**1.** **The Settlement resulted from arm's-length negotiations with no collusion**

In ensuring that a settlement resulted from arm's-length negotiations with no collusion, courts consider whether the settlement occurred before or after class certification. *Id.* at 946-47.  In *Bluetooth*, the Ninth Circuit listed subtle signs of collusion:

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay

class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* at 947 (internal quotation marks and citations omitted).

None of those three signs is present here. First, Class Members who submit valid claims are likely to receive $500 each, the maximum statutory damages for a non-willful and non-knowing violation of the TCPA. *See* 47 U.S.C. § 227(b)(3)(B). (Lehrman Decl. ¶¶ 37-38.) Second, the Settlement has no clear-sailing arrangement and did not prevent AllianceMed from objecting to this motion. Third, no part of the $350,000 Settlement Fund will revert to Defendants, not even uncashed checks to Class Members. (Settlement §§ 10.37, 15.3.)

In addition, in June 2020, the parties participated in a mediation session before the court-appointed Panel Mediator. (ECF No. 45.) *See Pederson v. Airport Terminal Servs.*, No. 15-cv-02400, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (oversight "of an experienced mediator" reflected noncollusive negotiations); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also* 2 McLaughlin on Class Actions, § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion"). Progress was made during June 2020 mediation, but the parties continued negotiations until February 2021, when they executed the Settlement. (ECF No. 53-1 at 13-14.) The Settlement was not the production of collusion.

### 2. The requested fees are reasonable, fair, and justified under the percentage-of-the-fund method

Courts consider a number of factors to determine the appropriate percentage of the fund to awarding as attorneys' fees in a common fund case including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-50 (9th Cir. 2002). The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount. *Id.* at 1047. "However, in most common fund cases, the award exceeds that [25%] benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)). Both the *Omnivision* and *Activision* Courts concluded that "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048.

Class Counsel's request for attorneys' fees in the amount of $87,500 equates to 25% of the $350,000 Settlement Fund. The fee request is fully supported by the factors enunciated in *Vizcaino* including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases.

### a. Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th Ed. 2004) ("fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). This factor, standing alone, supports Class Counsel's fee request.

The Settlement secured by Plaintiff and Class Counsel provides an excellent recovery for Class Members as compared to similar TCPA cases, despite the uncertainty of recovery in TCPA class actions. The Settlement provides for $350,000 in recovery for the Class.  Upon request of the Parties, to allow more time for Valid Claims, the Claim Deadline was extended to August 23, 2021.  (ECF No. 65 at1.)  Class Counsel estimate the per-Class Member Settlement Benefit will be $500.  (Lehrman Decl. ¶ 39.)

The settlement amount to class members is greater than numerous similar TCPA class action settlements which have been approved by courts within the Ninth Circuit and California in particular.  Below is a chart of eleven TCPA class action settlements that have received approval, including the value to each proposed class member for the respective case.

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Robles v. Lucky Brand Dungarees, Inc.*, No. 3:10-cv-04846 (NDCA) | 216,000 | $9.9 Million | $100 maximum |
| *Adams v. AllianceOne, Inc.*, No. 08-cv-0248 (SDCA) | 5.63 Million | $9 Million | $40 maximum |
| *Hartman v. Comcast Business Comm'ns*, 2:10-cv-00413-RSL (WDWA) | 148,843 | $3.8 Million | $25.53 maximum |
| *Hovila v. Tween Brands, Inc.*, No. 09-cv-00491-RSL (WDWA) | 100,000 | $5.33 Million Max | $20 Cash; or $45 Gift Certificate |
| *Clark v. Payless Shoesource, Inc.*, No. 09-cv-00915-JCC (WDWA) | 8 Million | $6.25 Million | $25 Gift Certificate |

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Cubbage v. The Talbots, Inc.*, 09-cv-00911-BHS (WDWA) | 18,000 | $1.44 Million | $80 Gift Certificate ($40 Cash Value) |
| *In Re Jiffy Lube*, No. 3:11-md-02261 | 2.3 Million | $47 Million | $17.29 Gift Certificate ($12.97 Cash Redemption) |
| *Bellows v. NCO Fin*, No. 07-cv-1413-W(AJB) (SDCA) | Unknown, but in the thousands | $950,000 | $70 |
| *Lemieux v. Global Credit & Collection*, 08-cv-1012-IEG(POR) (SDCA) | 27,844 | $505,000 | $70 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (SDCA) | 66,100 | | $100 |
| *Arthur v. Sallie Mae, Inc.*, No. 10-cv-0198, (WDWA) | | $24.15 Million | Between $20 and $40 |

The case at bar was resolved for a sum that represents a far greater payout per valid claim than any of the cases noted above. This fact strongly supports the fees requested by Plaintiff.

### b.    The risks of litigation support the requested fees

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of

requested fee). Defendants have raised twenty-six affirmative defenses, including constitutional challenges. (ECF No. 40 at 6-11.) By contesting the September-2019-filed case until reaching a settlement in February 2021, there is no doubt that Defendants have demonstrated their willingness to mount a vigorous defense.

Although Plaintiff feels strongly about the case's merits, there are costs and risks to continuing the litigation. All litigation is risky but with the TCPA climate in constant flux, no one can predict the outcome of a case. If the case were to continue, Plaintiff would need to obtain a contested class certification, defeat any summary judgment motions, win at trial, defend the judgment on appeal, and collect the judgment. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant monetary benefit and the deterrent effects it would have. The Settlement is a compromise avoiding the risk that the Class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the TCPA. Furthermore, an experienced mediator agreed with the parties. This Court also agreed with the parties' reasoning by preliminarily approving the Settlement. Thus, the risks of continued litigation not only support the Settlement, the great result obtained for the Class also supports the reasonableness of the requested fees.

### c.    The skill required and quality of work performed support the requested fees

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047. Class Counsel are experienced TCPA class-action litigators, having litigated more than 150 TCPA class actions nationwide and having been appointed class counsel in many of those cases. (Lehrman Decl. ¶¶ 11-16; Eisenberg Decl. ¶¶ 7, 11.) They have also successfully defended and prosecuted other types of class actions and have secured noteworthy recoveries for those classes.

1  (Lehrman Decl. ¶ 17; Eisenberg Decl. ¶ 8.)  Class Counsel's proven track record and

2  strong reputations demonstrate not only the quality of work performed, but also the

3  skill required to successfully prosecute large complex class actions.  (Lehrman Decl.

4  ¶¶ 11-18; Eisenberg Decl. ¶¶ 6, 9-10.)

5       In the present case, Class Counsel  (a) conducted an extensive investigation

6  into the underlying facts prior to bringing the action; (b) evaluated available causes

7  of action, including not only the TCPA but others; (c) thoroughly researched class

8  members' claims and available defenses; (d) prepared a detailed and lengthy class-

9  action complaint; (e) filed an amended complaint after Defendants moved to strike

10  the complaint; (f) propounded requests for admissions, interrogatories, and requests

11  for production of documents on both Defendants; (g) scheduled depositions; (h)

12  mediated the case; (i) drafted the settlement agreement and exhibits; (j) evaluated

13  potential settlement administrators; (k) investigated *cy pres* recipients; (l) oversaw

14  the notice and claims administration process; (m) prepared stipulations seeking to

15  extend deadlines to allow for a second notice to the Class; (n) telephoned Class

16  Members to confirm they received the fax notice; (o) prepared this motion and the

17  supporting   declarations;   (p)   regularly   communicated   with   Plaintiff;   (q)

18  communicated   with   the   settlement   administrator;   and   (r)   communicated   with

19  opposing counsel  (Lehrman Decl. ¶¶ 21-26, 41; Eisenberg Decl. ¶¶ 39, 42.)  In

20  addition, Class Counsel will prepare the motion for final approval of the settlement,

21  travel to California for the final approval hearing, and continue communicating with

22  the Class, the settlement administrator, and Defendants' counsel.  (Lehrman Decl.

23  ¶¶ 42, 49; Eisenberg Decl. ¶ 43.)

24       Thus, Class Counsel's skill, diligence, and expertise played significant roles

25  in the parties' reaching and carrying out a settlement, and therefore support the

26  requested fees.

27

28

### d.   Class Counsel's undertaking of this case on a contingency-fee basis supports the requested fees

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there were a recovery. (Lehrman Decl. ¶ 43; Eisenberg Decl. ¶ 38.) In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money. (*See* supra, § III.A.2.c; Lehrman Decl. ¶¶ 40-45; Eisenberg Decl. ¶¶ 41, 42, 45.)

As of August 5, 2021, Class Counsel have incurred $3,874.73 in expenses and costs and have spent 175.9 hours litigating this action. (Lehrman Decl. ¶¶ 40-42 & Ex. B; Eisenberg Decl. ¶¶ 39, 42, 45 & Ex. A.) Thus, Class Counsel's "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047. As articulated above, the percentage-of-the-fund method is the preferred and most widely used method for determining attorneys' fees in a common fund case. The requested fees are fully supported by the factors enunciated by *Vizcaino* and are commensurate with the excellent result obtained for the Class, which is comparable or in excess of settlements in other TCPA cases, as discussed *supra*.

### 3. The requested fee is reasonable, fair, and justified under the lodestar method

While the requested fees are fully supported by the percentage-of-the-fund method, the application of that method is optional and may be applied at the Court's discretion. A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050. Such a cross-check will confirm that a fee award of 25% of $350,000, i.e., $87,500, is reasonable, fair, and justified.

The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and, (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[2]

### a. Class Counsel's lodestar is reasonable

The accompanying declarations of Class Counsel show the hours of work and billing rates used to calculate their lodestar. A summary follows:

| NAME | HOURS INCURRED | RATE | TOTAL |
|---|---|---|---|
| SETH LEHRMAN | 55 | $600 | $33,000 |
| RONALD J. EISENBERG | 120.9 | $575 | $69,517.50 |
| **TOTAL COMBINED LODESTAR** | 175.9 | | $99,517.50 |

---

[2] The risk inherent in contingency representation is a critical factor. The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when . . . there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002).

(Lehrman Decl. ¶ 40-41; Eisenberg Decl. ¶¶ 41-42.)  Class Counsel have devoted a total of 175.9 hours to this litigation as of August 5, 2021, and have a total lodestar of $99,517.50, which represents a negative multiplier of -1.14.  In addition, Class Counsel will devote additional time going forward in seeking final approval of, and implementing the Settlement, including attending the final approval hearing, assisting Class Members, and overseeing claims administration.

Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having two firms working on this case.  Tasks were reasonably divided among firms to ensure avoiding the replication of work.[3]  Thus, Class Counsel's lodestar is reasonable.

### b.     Class Counsel's hourly rates are reasonable

Similarly, Class Counsel's hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895 n.11 (1994);  *see also Davis v. City and County of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982). As demonstrated in their declarations, Class Counsel are each experienced, highly regarded bar members with extensive expertise in class actions and complex litigation like the one here.

According to the well-respected Laffey Matrix, reasonable hourly rates for a partner of a law firm practicing 8-10 years is $672, 11-19 years is $759, and 20+ years is $914.   http://www.laffeymatrix.com/see.html  (last visited Aug. 3, 2021). Class Counsel each have 20+ years of legal experience.

---

[3] Paralegal Iris Zambrano of the Edwards Pottinger firm also expended 41.5 hours of time on this case. Hours for paralegals and support staff are recoverable but were zeroed for purposes of this motion.

Mr. Lehrman, who began practicing law in California in 1995, has dedicated his career to complex civil litigation matters and consumer protection litigation, including class action litigation under the TCPA and other class actions, in state and federal courts in Florida, California, and across the United States.  (Lehrman Decl. ¶¶ 3-4, 11.)  Mr. Lehrman has represented individuals and businesses in class action and whistleblower cases to holding corporate wrongdoers accountable.  He was class counsel and trial counsel in a class action against an entity that does business as Trump National Golf Club–Jupiter, *Hirsch v. Jupiter Golf Club*, LLC, 2017 WL 448952 (S.D.Fla. Feb. 1, 2017).  In *Hirsch*, he and his firm deposed Donald Trump and Eric Trump and won a multi-million-dollar trial verdict.  (*Id.* ¶ 12.) Thus, the billing rate for Mr. Lehrman of only $600 per hour is well within the normal range of fees charged by firms for partner work.[4]

Additionally, Mr. Eisenberg, who has contributed substantially to this litigation, has litigated more than 120 TCPA class actions in federal and state courts and has been appointed lead counsel numerous times, including recently in a large TCPA case. (Eisenberg Decl. ¶ 7.) *See BPP v. Brasseler U.S.A. Dental*, No. 1611-CC00730-01 (St. Charles County Cir. Ct. Jan. 11, 2019) (appointed lead counsel and achieved $4.9 million settlement nationwide TCPA junk-fax class action).  Thus, the billing rate for $575 per hour for Mr. Eisenberg, an attorney with 21 years of experience, is justified.  (*Id.* ¶¶ 4, 40.)

Hence, Class Counsel's combined lodestar of $99,517.50, which exceeds the $87,500 requested, is reasonable and supports the requested attorneys' fees.

---

[4] *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), *aff'd in part*, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates of $675-795 for partners, up to $410 for associates, and up to $345 for paralegals); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842, at *4 (C.D. Cal 2008) (finding partner rates of $750 to $475 reasonable).

### B.    The Requested Costs and Expenses Are Fair and Reasonable

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)). The litigation costs and expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).  Based upon the discussion herein, Class Counsel believe that the costs and expenses incurred in this matter are fair and reasonable.

Throughout this litigation, Class Counsel incurred costs totaling $3,874.73. (Lehrman Decl. ¶¶ 43, 50 ($2,453.35); Eisenberg Decl. ¶ 45 ($1,421.38).)  These expenditures were necessary to secure the resolution of this litigation and Class Counsel put forward said costs without assurance that they would ever be repaid.  In light of the expenses Class Counsel were required to incur to bring this case to its current settlement posture, their request for costs is reasonable.  And Class Counsel will may incur further costs bringing the case to conclusion.

## IV.    CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD

Plaintiff requests a $5,000 Class Representative or Incentive Award for the work Plaintiff performed on the Class's behalf and the substantial benefit Plaintiff helped the Class receive. District courts in California have opined, in many cases, that a class representative or incentive award of $5,000 is presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) (finding that "[i]n this district, a $5,000 payment is presumptively reasonable"); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-43 (9th Cir. 2015); *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit*

*Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014). Some cases have resulted in such awards in excess of $5,000. *See Hogue v. YRC, Inc.*, No. EDCV 16-01338-CJC(JEMx) (C.D. Ca. June 24, 2019) (awarding $10,000); *Wright v. Randstad US, LP*, No. SACV 8:13-cv-00815-CJC-AGR (C.D. Ca. Sept. 15, 2016) (awarding lead plaintiffs $10,000 and $5,000).

Plaintiff's meaningful and active contribution to this litigation and the lack of any opposition to such an award demonstrate its reasonableness. (Spencer-Ruper Decl. ¶ 9, attached as **Exhibit C**.)  Plaintiff likely could have settled the case individually and received more than $5,000. (*Id.* ¶ 11; Lehrman Decl. ¶ 46.)  Had Plaintiff done so, the Class Members would have received nothing. Plaintiff has done the following:  engaged in frequent telephone communications with counsel; engaged in regular email communications with counsel; reviewed and approved the complaint and the amended complaint; conferred with Class Counsel regarding the class data obtained Defendants; reviewed Plaintiff's initial disclosures; prepared for mediation; participated in mediation; assessed the various offers and counteroffers during and in the months after mediation; reviewed the Settlement Agreement; discussed relevant TCPA case law with Class Counsel in order to better understand the issues; discussed with Class Counsel the proposed *cy pres* recipient; reviewed court orders in the case; reviewed the preliminary approval motion and exhibits; reviewed documentation from the Settlement Administrator; and reviewed the motion for attorneys' fees and incentive award.   (Spencer-Ruper Decl. ¶ 9.) Plaintiff is committed to continuing to play an active role in the case. (*Id.* ¶ 10.) Plaintiff acted dutifully as a class representative and should be awarded the requested $5,000 for playing a vital part in the litigation.

## V.     CONCLUSION

Class Counsel respectfully request that the Court grant this motion and award them award of attorneys' fees of $87,500 (25% of the Settlement Fund) and litigation

costs of $3,874.73, authorize the Settlement Administrator's fees, and award Plaintiff an incentive award of $5,000.

Date: August 5, 2021                    EDWARDS POTTINGER LLC

                              By: */s/ Seth M. Lehrman*
                                  SETH M. LEHRMAN
                                  *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

Filed electronically on this 5th day of August, 2021, with:

United States District Court CM/ECF system.

Notification sent electronically on this 5th day of August, 2021, to:

Honorable David O. Carter
United States District Court
Central District of California

Eric J. Troutman
Jason M. Ingber

                              /s/ Seth M. Lehrman, Esq.