Seth M. Lehrman (178303)
seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

Ronald J. Eisenberg (*Pro Hac Vice*)
reisenberg@sl-lawyers.com
SCHULTZ & ASSOCIATES LLP
640 Cepi Drive, Suite A
Chesterfield, MO 63005
Telephone: 636-537-4645
Facsimile: 636-537-2599

Attorneys for Plaintiff
Joan Spencer-Ruper, assignee of Retina Associates
Medical Group, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| **JOAN SPENCER-RUPER, assignee of RETINA ASSOCIATES MEDICAL GROUP, INC., individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**SCIENTIAE, LLC, et al.,**<br><br>Defendants. | **CASE NO. 8:19-cv-01709-DOC-ADS**<br><br><u>**CLASS ACTION**</u><br><br>**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Judge:      David O. Carter<br>Date:        September 27, 2021<br>Time:        8:30 A.M.<br>Courtroom:   9 D<br><br>[Filed and Served Concurrently with Proposed Order] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 27, 2021, at 8:30 a.m., before the United States District Court, Central District of California, Central District of California, Southern Division, Courtroom 9 D, 411 West 4th Street, Room 1053 Santa Ana, CA 92701, Plaintiff Joan Spencer-Ruper, assignee of Retina Associates Medical Group, Inc., will move for an order granting final approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: September 9, 2021                **EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
SETH M. LEHRMAN
Attorney for Plaintiff

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3**

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the subject matter of the instant motion. Defendants do not oppose this motion.

Date: September 9, 2021                **EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
SETH M. LEHRMAN
Attorney for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................... i

TABLE OF AUTHORITIES ............................................................... iv

MEMORANDUM OF POINTS & AUTHORITIES.........................1

    I.     INTRODUCTION. ...................................................1

    II.    STATEMENT OF FACTS....................................2

        A.    Factual background...........................................2

        B.    Proceedings to date ...........................................2

            1. Litigation......................................................2

            2. Mediation and Preliminary Approval. ...............3

        C.    Statement of Facts.............................................4

            1. The Class......................................................4

               a.    The Class Definition ..............................4

               b.    Class membership determination. ............4

            2. Settlement Payment and *cy pres* distribution....................4

            3. Money benefit to Class Members ...........................5

    III.   ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL............5

        A.    CAFA Notice ...................................................5

        B.    Direct Mail Notice and subsquent fax notice ...................5

        C.    Formal notice posted on the Settlement Website and Case-Specific Hotline..........................................6

        D.    Objections, opt outs, and settlement payouts...................7

            1. No objections or opt outs...........................7

            2. Settlement checks and *cy pres* award...........................7

            3. Class Representative incentive award. ...........................7

4. Class Counsel's Application for Attorneys' Fees and Costs .................................................................................. 8

5. Administrator's expenses for Notice and Adminstration .............................................................................. 8

IV. ARGUMENT ....................................................................... 8

    A. Final approval of the proposed settlement is warranted . 8

       1. Adequacy of Representation by Class Representative and Class Counsel ................................................... 9

       2. Arm's-Length Negotiation ..................................... 10

       3. Adequacy of Relief Provided for the Class .............. 10

          a. Costs, Risks, and Delay of Trial and Appeal ........ 11

          b. Effectiveness of Method of Relief Distribution ..... 12

          c. Terms of Proposed Award of Attorneys' Fees ..... 13

          d. Agreement Identification Requirement ................ 13

       4. Equitable Treatment of Class Members ..................... 13

       5. The Court should finally certify the Class for purposes of settlement ......................................................... 13

          a. The Settlement Class meets Rule 23(a)'s requirements ................................................. 14

              i. The proposed Class of 1,146 is numerous ……………………………………14

              ii. The commonality requirement is satisfied, because common questions of law and fact exist

              iii. The typicality requirement is met …………15

              iv. The adequacy requirement is satisfied ……15

              v. Common questions predominate …………..16

vi. Class treatment for settlement purposes is superior to individual resolutions............17

b.    The Settlement Class meets Rule 23(b)(3)'s requirements. ..........................................18

6.  Class Notice was consistent with Rule 23 and the Ninth Circuit requirements and provided adequate notice for claims, objections and opt outs ...........................19

7.  $500 per valid claim is an exceptional outcome.............21

V.    CONCLUSION ....................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barani v. Wells Fargo Bank, N.A.*,
 No. 12CV2999-GPC KSC, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ...........20

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015)... 7

*Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473 (S.D. Cal. 2013) ........................7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................ *passim*

*In re Diamond Foods, Inc.*, Sec. Litig., No. C 11-05386 WHA,
 2014 WL 106826 (N.D. Cal. Jan. 10, 2014) ........................................7

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ........21

*In re Wireless Facilities,* 253 F.R.D. 607 (S.D. Cal. 2008)..............................13, 15

*Lo v. Oxnard European Motors, LLC,*
 No. 11CV1009 JLS MDD, 2012 WL 1932283 (S.D. Cal. May 29, 2012) .........20

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
 244 F.3d 1152 (9th Cir. 2001).....................................................16, 18

*Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173 (9th Cir. 1977) ...........................21

*Miller v. CEVA Logistics USA, Inc.*,
 No. 2:13-CV-01321-TLN, 2015 WL 4730176 (E.D. Cal. Aug. 10, 2015)..........11

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)............19

*National Rural Tel. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...21

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............8

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................10

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994).................................................12, 19

*Schaffer v. Litton Loan Servicing, LP,*
  No. CV 05-07673 MMM JCX, 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) 20

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993) ........................... 21

*Wershba v. Apple Computer, Inc.,* 91 Cal. App.4th 224 (2001) ............................. 11

**Statutes**

47 U.S.C. § 227 ................................................................................................. *passim*

**Rules**

28 U.S.C. § 1715 ...................................................................................................... 5

47 U.S.C. § 227 ................................................................................................. *passim*

Fed. R. Civ. P. 23(b)(3) .................................................................................... 16-18

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 19, 20

Fed. R. Civ. P. 23(e)(2)(A)-(D) ....................................................................... *passim*

**Other Authorities**

Federal Judicial Ctr., Judges' Class Action Notice & Claims Process Checklist &
  Plain Language Guide 3 (2010) ........................................................................ 21

## MEMORANDUM OF POINTS & AUTHORITIES

### I.  INTRODUCTION

By order dated March 19, 2021 (ECF No. 59), this Court preliminarily approved the Settlement Agreement ("Agreement" or "Settlement") (ECF No. 53-1) reached between Plaintiff Retina Associates Medical Group, Inc. ("Plaintiff" or "Retina"), and Defendants Scientiae, LLC, and Montefiore Medicine Academic Health System, Inc., f/k/a Albert Einstein College of Medicine, Inc., d/b/a Albert Einstein College of Medicine, in this junk-fax class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1]  Simultaneously, this Court directed Notice to be disseminated to the Settlement Class.  (ECF Nos. 59 at 3-4, 62 at 1.)  The Notice plan approved by the Court has now been implemented and direct notice has been sent to the Settlement Class.  Not one member of the Settlement Class has to date objected or opted out.

The $350,000 Settlement resulted from the Parties' participation in a mediation session with Panel Mediator Stacie Feldman Hausner in June 2020 in Los Angeles, and then many additional months of negotiation.  The Settlement provides for a real financial benefit to the Class Members.  The Settlement Class, totaling 1,146, consists of all persons in the United States, who did not have an established business relationship with Defendants, who received a facsimile advertisement sent by or on behalf of Defendants advertising the May 8, 2019 Advanced One-On-One Injection Training with Today's Experts in Aesthetic Medicine medical education event.  Excluded from the Class are Defendants, their employees, their agents, and members of the judiciary.

---

[1] Retina has assigned its claim to Joan Spencer-Ruper, the person from Retina most knowledgeable about this case.  Hereafter, she is likewise referred to as "Plaintiff" or "Retina."

Plaintiff now moves for final approval of this Settlement. Defendants do not oppose the motion. If the Settlement is finally approved, each Class Member who submitted a valid a claim will receive $500.

## II. STATEMENT OF FACTS

### A. Factual background

Retina Associates Medical Group, Inc., was a small, California ophthalmologic practice with its principal place of business in Orange County. (Decl. of Seth Lehrman ("Lehrman Decl.") ¶ 27, attached as **Exhibit A**.) Joan Spencer-Ruper is the assignee of Retina Associates Medical Group, Inc.'s claim and has been the main party contact in this case from its inception. (*Id.* ¶ 28.) Scientiae, LLC, is a company that puts on live educational programs, including ones offering continuing education (CE) credits. (*Id.* ¶ 29.) Montefiore Medicine Academic Health System, Inc., f/k/a Albert Einstein College of Medicine, Inc., d/b/a Albert Einstein College is a medical school that used to be part of Yeshiva University in New York. (*Id.* ¶ 30.) In 2019, Defendants sent or caused to be sent to 1,146 Class Members fax advertisements for a May 8, 2019 medical education event. (Decl. of Amy Lechner ("Lechner Decl.") ¶ 6, attached as **Exhibit B**.)

Plaintiff alleged that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending to Plaintiff and the Class unsolicited fax advertisements that lacked proper opt-out notices. (ECF No. 36 at 4-7.) Plaintiff contended that Plaintiff and the Class are entitled to statutory damages under the TCPA. (*Id.* at 12.) Defendants vigorously denied that they violated the TCPA and pleaded numerous affirmative defenses. (ECF No. 40 at 6-10.)

### B. Proceedings to date

#### 1. Litigation

In September 2019, a few months after having received an April 29, 2019 fax advertising a medical education event, Plaintiff filed a Class Action Junk-Fax Complaint, alleging both non-willful and willful violations of the TCPA based on

2

unsolicited facsimile advertisements. (ECF Nos. 1 & 1-1.)  Plaintiff sought $500 per non-knowing or non-willful violation and $1,500 for each knowing or willful violation. (ECF No. 1 at 12-13.)  Plaintiff's claim was brought on behalf of a class of individuals who allegedly received similar unsolicited facsimile advertisements from Defendants. (ECF No. 1.)

In January 2020, Defendants answered and asserted twenty-four affirmative defenses. (ECF No. 16 at 6-11.)  Simultaneously, they moved to strike the complaint for allegedly containing failsafe class allegations. (ECF No. 17.)  The Court then issued an order setting a scheduling conference. (ECF No. 21.)  Plaintiff thereafter filed a first amended complaint, rewording the Class definition. (ECF No. 23 at 8 ¶ 43.)  Defendants then moved to strike the amended complaint for allegedly containing failsafe class allegations. (ECF No. 25.)  The Court denied as moot Defendants' original motion to strike class allegation. (ECF No. 26.)

The case moved forward, and in February 2020, Plaintiff served Defendants with separate requests for production of documents, interrogatories, and requests for admissions.  In March 2020, the Parties submitted a Joint Rule 26(f) Report. (ECF No. 27.)  With consent of Defendants, Plaintiff filed a second amended complaint, seeking the same relief as previously. (ECF Nos. 36-37.)  Defendants again answered, this time asserting additional affirmative defenses. (ECF No. 40 at 6-11.)

### 2.    Mediation and Preliminary Approval

In April 2020, the Court referred the case to the Court Mediation Panel and issued a scheduling order. (ECF Nos. 42-43.)  On June 1, the Parties engaged in video-conferenced mediation before Panel Mediator Stacie Feldman Hausner, Esq., in Los Angeles, and made progress toward a settlement. (ECF No. 45; Lehrman Decl. ¶ 25.)  Building on that progress, the Parties continued to negotiate for many months, and in February 2021 finalized the Agreement. (Lehrman Decl. ¶ 25.)

On February 16, 2021, Plaintiff moved for preliminary approval of the class action settlement and certification of the Settlement Class. (ECF No. 53.)  On

March 19, the Court granted Plaintiffs' motion (ECF No. 59) and, on April 7,
granted the Parties' request for a short extension of deadlines (ECF No. 62).

## C.    Statement of Facts

### 1.    The Class

#### a.    The Class definition

The "Class" is defined in the Agreement as follows:

> All persons in the United States, who did not have an established
> business relationship with Defendants, who received a facsimile
> advertisement sent by or on behalf of Defendants advertising the
> May 8, 2019 Advanced One-On-One Injection Training with
> Today's Experts in Aesthetic Medicine medical education event.
> Excluded from the Class are Defendants, their employees, their
> agents, and members of the judiciary.

(Agreement § 10.7.)

#### b.    Class membership determination

The Class membership, determined from Defendants' records, consists of
1,146 Class Members.  (Lehrman Decl. ¶ 34; Lechner Decl. ¶ 6.)

### 2.    Settlement Payment and *cy pres* distribution

Under the Proposed Settlement, Defendants agree to establish a $350,000
Settlement Fund to fund (1) Settlement Administration Costs; (2) attorneys' fees,
costs, and expenses to Class Counsel, as approved by the Court; (3) an incentive
award, if any, to the Representative Plaintiff; (4) Class recovery on a pro rata basis
up to $500 each to Class Members who submit a Valid Claim Form; and (5) any *cy
pres* distribution  with the parties proposing Medical Aid for Children of Latin
America, Inc. ("MACLA"), a 501(c)(3) non-profit organization that since 1985 has
been performing free surgeries for underprivileged children with physical
deformities such as cleft lips and palates, burn scar contractures, and soft tissue
deformities. (Agreement §§ 10.37,  10.37.2.)  The amount of the Settlement Fund

1 shall not be reduced because of any members of the Class electing to opt out or be
2 excluded from the Settlement or for any other reason.  (*Id.* § 10.37.2.)

### 3.  Monetary benefit to Class Members

4 The Settlement Agreement provides for $350,000 in cash benefits (minus
5 Settlement Administrations Costs, attorneys' fees, costs, and expenses, and any
6 incentive awards) to Class Members on a pro rata basis, up to $500 per Class
7 Member, after the claims period.  Should there be any funds remaining, such funds
8 will go to the *cy pres* recipient.  (*Id.* § 10.37.2.)

## III.  ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

10 The Settlement Administrator's compliance is described below.

### A.  CAFA Notice

12 On March 15, 2021, in compliance with the Class Action Fairness Act
13 ("CAFA"), 28 U.S.C. § 1715, Settlement Administrator Angeion Group, LLC
14 ("Angeion") mailed a cover letter to the U.S. Attorneys General and the Attorneys
15 General for all 50 states and territories/other parties along with a CD-ROM
16 containing the requisite documents.  (Lechner Decl. ¶ 5 & Ex. A thereto.)  Class
17 Counsel received no communications from any CAFA Notice recipients. (Decl. of
18 Ronald J. Eisenberg ("Eisenberg Decl.") ¶ 48, attached as **Exhibit C**.)

### B.  Direct Mail Notice and subsequent fax notice

20 As explained in detail in the Declaration of Amy Lechner Regarding
21 Settlement Notice to Settlement Class, the Angeion complied with the notice
22 procedure set forth in the Preliminary Approval Order.  (Lechner Decl. ¶¶ 6-8.)
23 Angeion first reviewed an electronic file containing the names and fax numbers of
24 Settlement Class Members the file and removed duplicative entries, resulting in
25 1,146 unique Settlement Class Member records. (*Id.* ¶ 6.)  Angeion then performed
26 a Reverse Fax Address Lookup, yielding 206 addresses, to which Angeion mailed
27 the Long Form Notice and paper Claim Form.  (*Id.* ¶ 7.)  Prior to mailing, Angeion
28 processed Settlement Class Member mailing addresses through the United States

Postal Service ("USPS") National Change of Address ("NCOA") database to identify updated address information for individuals and businesses who had moved in the last four years and filed a change-of-address card with the USPS.  (*Id.* ¶ 8.) No mailings of the Long Form Notice and Claim Form were returned as undeliverable mail.  (*Id.* ¶ 9.)

To bolster the claims filing rate, on June 17, 2021, the Parties filed an Amended Joint Stipulation for Order to Extend Class Notice Deadlines and to Continue Final Approval Hearing.  (*Id.* ¶ 10; ECF No. 64.)  The Parties sought permission to send additional notice by fax and to allow Plaintiff's Counsel to contact Class Members by telephone to confirm receipt of the Class Notice.  (ECF No. 64 ¶¶ 6-7.)  Upon the Court's Order granting the amended stipulation to extend deadlines (ECF No. 65), Angeion performed a Phone Number validation on the Settlement Class Member fax numbers, which returned 931 active phone numbers (Lechner Decl. ¶ 10).  On July 19, Angeion caused a fax transmission to be sent to the 931 validated phone numbers comprising a revised version of the Long Form Notice and Claim Form with extended claim-filing and objection and exclusion deadlines, resulting in 820 successful fax transmissions.  (*Id.* ¶ 11.)

In addition, as permitted by the Court, Class Counsel made telephone calls to Class Members to confirm they received the Class Notice.  (Eisenberg Decl. ¶ 44.)

**C.**    **Formal notice posted on the Settlement Website and Case-Specific Hotline**

In compliance with the Preliminary Approval Order, Angeion established a Settlement Website, www.ScientiaeTCPASettlement.com, for visitors to view answers to frequently asked questions and download important case documents, including the Claim Form.  (Lechner Decl. ¶ 12.)  Angeion also established a toll-free hotline to further apprise Class Members of their rights and options.  (*Id.* ¶ 14.) As of September 1, 2021, the Settlement Website had received 258 page views and the hotline had received numerous calls.  (*Id.* ¶¶ 13-15.)

**D.    Objections, opt outs, and settlement payouts**

     **1.    No objections or opt outs**

Notwithstanding mailed notice on April 22 and fax notice on June 19, 2021, there have been zero opt outs and zero objectors to the Settlement.  (*Id.* ¶ 16.)

The fact that there have been not only no objections—despite direct notice and the constant presence of an aggressive professional objectors' bar—but also no opt outs, is a testament to the strength and fairness of the Settlement. *See In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2014 WL 106826, at *2 (N.D. Cal. Jan. 10, 2014) (noting, as support for approval, that there had been only 29 requests to opt out of class and no objection to settlement or requested attorney's fees and expenses); *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 481 (S.D. Cal. 2013) (fact that only 62 class members filed timely requests to opt out indicates that vast majority of class members reacted favorably to the proposed settlement).

     **2.    Settlement checks and *cy pres* award**

The deadline for Class Members to submit Claim Forms was extended from June 7 to August 23, 2021.  (ECF No. 65 ¶ 1.b.)  Angeion received 18 claims. (Lechner Decl. ¶ 18.)  After deduction of Angeion's administration fees, estimated to be $21,357.00, Class Counsel's requested fees of $87,500 and expenses and costs of $3,874.73, and a requested incentive award of $5,000, there would be approximately $232,268.27 available to distribute to the Class and to MACLA.

     **3.    Class Representative incentive award**

District courts in California have opined, in many cases, that a class representative or incentive award of $5,000 is presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) (finding that "[i]n this district, a $5,000 payment is presumptively reasonable").  Plaintiff requests a $5,000 incentive award for the work Plaintiff performed on Class's behalf and the substantial benefit Plaintiff helped the Class

receive.  Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award ("Fee Motion"), previously filed, details Plaintiff's meaningful and active contribution to this litigation (ECF Nos. 66 at 22-23, 66-3), and there has been no opposition to such an award (Lechner Decl. ¶ 16; Lehrman Decl. ¶ 51; Eisenberg Decl. ¶ 48).

### 4.  Class Counsel's Application for Attorneys' Fees and Costs

The Settlement Agreement expressly contained no "clear-sailing" provision as to Class Counsel's compensation. (Agreement § 13.5.)  It stated that Class Counsel will not seek attorneys' fees in excess of 25 percent of the Settlement Benefits, exclusive of costs and expenses.  (*Id.*)  Class Counsel request $87,500 in attorneys' fees and $3,874.73 in costs and expenses.  Those amounts are explained in detail in Plaintiff's Fee Motion.  Plaintiff asks the Court the award the requested sums to compensate Class Counsel for their time and efforts in litigating this contingency case on behalf of the Class and obtaining an excellent result.

### 5.  Administrator's expenses for Notice and Administration

Defendants have agreed to pay all costs of notice and claims administration from the Settlement Fund.  (Agreement §§ 10.37, 15.2.)  Angeion has estimated the final cost of administration to be $21,357.00.

## IV.  ARGUMENT

### A.  Final approval of the proposed settlement is warranted

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).  The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The Court may approve a settlement that would bind class members only after a hearing and on finding that the settlement is fair, reasonable, and adequate, after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

The Court has already preliminarily found the requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied. (ECF No. 59.) The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable, and adequate.

### 1.    Adequacy of Representation by Class Representative and Class Counsel

Under Rule 23(e)(2)(A), the first relevant factor is whether the class representative and class counsel have adequately represented the class. This analysis includes for example, "the nature and amount of discovery" undertaken in the litigation or "the actual outcomes of other cases." Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

The nature and amount of discovery completed was significant and substantial. Plaintiff served Defendants with separate requests for production of

documents, interrogatories, and requests for admissions. Plaintiff obtained from Defendants spreadsheets showing Class data. (Lehrman Decl. ¶ 34.)

In addition, Class Counsel have extensive experience in litigating class actions and particular expertise in consumer protection and TCPA litigation and have obtained meaningful outcomes in other TCPA class actions. (Lehrman Decl. ¶ 12-16; Eisenberg Decl. ¶¶ 7, 11-13.) Accordingly, Plaintiff requests that the Court find that both Ronald J. Eisenberg and Seth Lehrman are adequate under Rule 23(e)(2)(A) and appoint them both as Class Counsel. In addition, Plaintiff has actively participated in this case, including at mediation, and served the Class well.

## 2. Arm's-Length Negotiation

The second Rule 23(e)(2) factor calls for confirmation that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit has long supported settlements reached by capable opponents in arm's-length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965 (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)). As noted above, the Parties mediated the case in June 2020 made progress on settling but continued to negotiate until finalizing the Agreement in February 2021. The Settlement was not the product of collusion but rather of hard-fought litigation and a reasonable compromise.

## 3. Adequacy of Relief Provided for the Class

The third Rule 23(e)(2) consideration is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P.

10

23(e)(2)(C).  The relief "to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

### a.  Costs, Risks, and Delay of Trial and Appeal

Although Plaintiff feels strongly about the case's merits, there are costs and risks to continuing the litigation.  All litigation is risky but with the TCPA climate in constant flux, no one can predict the outcome of any case.  If the case were to continue, Plaintiff would need to achieve class certification, defeat summary judgment motions, win at trial, defend the judgment on appeal, and collect the judgment.  If Plaintiff were to prevail at trial and receive a statutory award of $500 for each of the 1,146 faxes sent, the judgment could be $573,000 or up to treble that number if it were able to prove that Defendants' violations were done willfully or knowingly.  *See* 47 U.S.C. § 227(b)(3).  A $350,000 settlement now, without the myriad risks listed above, is a remarkable outcome.

"In the context of a settlement . . . the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." *Wershba v. Apple Computer, Inc.*, 91 Cal. App.4th 224, 250 (2001).  In considering the Settlement, Plaintiff and Class Counsel carefully balanced all of the risks of continuing to engage in protracted and contentious litigation against the benefits available to the Class by settling and consequently support the Settlement and seek its final approval. (Lehrman Decl. ¶ 50; Eisenberg Decl. ¶ 31.) *See Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176, at *5 (E.D. Cal. Aug. 10, 2015) ("With this settlement, the Settlement Class Members have an opportunity for an immediate, guaranteed payout instead of prolonged litigation which will run the risk of uncertain recovery.").  Plus, an experienced Panel Mediator, intimately familiar with the instant litigation, agreed with the Parties and helped them craft a fair compromise.  (ECF No. 45.)

### b.    **Effectiveness of Method of Relief Distribution**

Next, this Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).  "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*  Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994).

Angeion provided notice via First Class U.S. Mail and then by fax.  (Lechner Decl. ¶¶ 8-11; Settlement Agreement § 12.2.)  Angeion also made Claims forms available on the Settlement Website and that website allowed for online submissions. (Settlement Agreement § 12.9.)  To be valid, the claim form was required to be substantially filled out, timely, and correct (defining incorrect as forms that contain false statements or if the class member otherwise is not entitled or authorized to be treated as claimed).  (*Id.* § 10.40.)  The Claim Forms, attached as Exhibits B and D to the Settlement Administrator's declaration, are consistent with the draft attached to the Settlement Agreement and preliminarily approved by the Court and the revisions permitted by the Court when extending deadlines.  (Lechner Decl. Exs. B, D; ECF. No. 53-1 at 17-25.)  The Claim Form contained a certification "under penalty of perjury" to maintain the integrity of the claims process.  The claims process was sufficiently thorough, but not unduly demanding, and the proposed method of distribution, i.e., mailing checks that will be valid for 90 days after issuance (Settlement Agreement §§ 15.3, 16), is effective.  Overall, the distribution process here is simple, effective, and common in TCPA settlements.

**c.    Terms of Proposed Award of Attorneys' Fees**

The Court must also consider "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(c).

As previously indicated in the Settlement Agreement and Plaintiff's motion for preliminary approval, Class Counsel is applying for an award of attorneys' fees of $87,500 (i.e., 25% of the $350,000 Settlement Fund), plus costs and expenses. Plaintiff will not burden the Court with unnecessary duplication of Plaintiff's Fee Motion.  (ECF No. 66.)  Class Counsel strongly believe that such requested fees are fully supported under both the percentage-of-the-fund and under the lodestar approach, which, due to the amount of work done on this case, would result in a *negative* lodestar multiplier.  (Lehrman Decl. ¶ 45; Eisenberg Decl. ¶ 45.)  Finally, Class Counsel will not receive any payment ahead of the Class.   (Settlement Agreement § 15.3.)

**d.    Agreement Identification Requirement**

Although the Court must evaluate any agreement made in connection with the proposed Settlement, *see* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3), the Settlement Agreement before the Court is the sole agreement between the Parties.  Thus, the Court need not evaluate any additional agreements.

**4.    Equitable Treatment of Class Members**

The final Rule 23(e)(2) factor concerns whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D). Based on the number of claims submitted, Class Members who submit a valid claim will receive $500.

**5.    The Court should finally certify the Class for purposes of settlement**

Certification of a class for settlement purposes requires a determination that certain requirements of Rule 23 are met.  *See In re Wireless Facilities*, 253 F.R.D.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

at 610. As explained below, class certification is appropriate here because the proposed Settlement meets the requirements of Rule 23(a) and (b)(3).

a.    **The Settlement Class meets Rule 23(a)'s requirements**

i.    **The proposed Class of 1,146 is numerous**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). "[N]umerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). Here, the Settlement Class consists of 1,146 recipients of Defendants' facsimile advertisements during the Class Period. (Lehrman Decl. ¶¶ 31, 34.) Thus, the proposed Class is sufficiently numerous.

ii.    **The commonality requirement is satisfied, because common questions of law and fact exist**

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, for purposes of settlement, the proposed Class Members' claims stem from the same factual circumstances, specifically the sending of allegedly unsolicited facsimile advertisements of a medical education event without proper opt-out notices. (Lehrman Decl. ¶ 34.) Plaintiff's claims also present questions of law that are common to all members of the Class for settlement purposes, including (1) whether Defendants' fax advertisements contained the opt-out notice required by the TCPA; (2) whether their fax advertisements violated the TCPA; (3) whether Defendants willfully or knowingly violated the TCPA; and (4) whether statutory damages per facsimile or per violation of the TCPA applies. (ECF No. 36 at 9 ¶ 48.) The

Settlement Class Members all seek the same remedy.  Under these circumstances, the commonality requirement is satisfied.  *See Hanlon,* 150 F.3d at 1019-20.

### iii.     The typicality requirement is met.

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  For purposes of settlement, Plaintiff's claim is typical of the Class's claims because the claims all arise from the same factual basis— unsolicited facsimile advertisements—and are based on the same legal theory, i.e., an alleged TCPA violation. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Plaintiff claims receipt of the same unsolicited fax advertisement from Defendants as the Class and that the faxes lacked proper opt-out notices.  (ECF Nos. 36 at 5 ¶ 19 & No. 36-1.)  Accordingly, the Plaintiff's claim is typical of those of the Settlement Class.  Thus, the typicality requirement is satisfied.

### iv.     The adequacy requirement is satisfied.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiff and Class Counsel have no conflicts of interest with other Class Members because Plaintiff's claim is typical of those of other Settlement Class Members.  In addition, Class Counsel have done work in identifying potential claims in the action and filed suit under the TCPA, which specifically addresses unsolicited faxes.  Class Counsel are experienced in handling class actions, other complex litigation, and the types of claims asserted in the action and have litigated numerous TCPA fax class actions.  Through those cases they have gained

knowledge of the applicable law.  They have committed and will commit resources to representing the Class.  (Lehrman Decl. ¶¶ 48-49; Eisenberg Decl. ¶¶ 38, 46.)

Plaintiff and Class Counsel have been prosecuting this litigation vigorously for the Class.  Plaintiff and Class Members share the common goal of protecting and improving privacy rights throughout the nation, and there is no conflict among them.  (Lehrman Decl. ¶ 52.  Class Counsel are qualified to represent the interests of the Class.  Rule 23(a)(4) is therefore satisfied.

**v.    Common questions predominate.**

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.) (citation omitted), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*  Here central inquiries for purposes of the proposed Settlement include whether Defendants violated the TCPA by sending faxes to Plaintiff and Class Members without permission, whether the faxes sent to Plaintiff and Class

Members required an opt-out notice, and whether Defendants willfully or knowingly violated the TCPA.  (ECF No. 36 at 9 ¶ 48.)

### vi.    Class treatment for settlement purposes is superior to individual resolutions

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163; *see also Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("[A] class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that certification is appropriate. Ordinarily, these factors are (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply.  In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems."  *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997).  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious."  *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v.*

*American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted). Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any Settlement Class Member who wishes to pursue a separate action could opt out of the Settlement.
- There is no competing litigation regarding claims at issue.
- Plaintiff believes this forum is appropriate, and Defendants do not oppose the forum.

### b. The Settlement Class meets Rule 23(b)(3)'s requirements

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Common questions of law and fact predominate over individual questions here, including whether Plaintiff and other class members received unsolicited faxes which did not contain a proper opt-out notice.

A class action is a superior to other available methods because (1) class members are presumably unaware that their rights may have been violated and individual recovery would be limited and do not incentivize individuals to bring suit, (2) no member of the Class has filed a TCPA suit in federal court, and (3) a significant portion of the Class has numbers with California area codes, which

makes sense given that May 8, 2019 program took place in Los Angeles.  For final approval purposes, those reasons are compelling.

**6.    <u>Class Notice was consistent with Rule 23 and the Ninth Circuit requirements and provided adequate notice for claims, objections and opt outs</u>**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must order the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."    Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Rather, notice must be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(c)(2)(B) sets forth requirements as to the content of the notice.  The notice must concisely and clearly state in plain, easily understood language (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests

exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Administrator first disseminated by Mail the Class Notice in a form materially consistent with Exhibit A to the Settlement Agreement and then a Class Notice by fax after the Court's June 22, 2021 Order extending deadlines and authorizing such notice. (Lechner Decl. Exs. B, D.) The Class Notices here satisfy each of the requirements of Rule 23(c)(2)(B) above. Further, mailed notice has routinely been held to be adequate notice to a Settlement Class. *See Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving notice plan where class members were sent postcards that directed them to a settlement website); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012) (final approval of class settlement using postcard notice and settlement website). No mailed notices were returned as undeliverable. (Lechner Decl. ¶ 9.) And the faxed notice proved highly effective in reaching the Class. (*Id.* ¶ 11.)

The Parties provided Angeion with an electronic file containing the names and fax numbers of Settlement Class Members. (*Id.* ¶ 6.) Angeion performed Reverse Fax Address Lookup to identify mailing addresses and then processed those addresses through the National Change of Address database. (*Id.* ¶ 8). The Class Notice was mailed to 206 Class Members, with no undeliverable returns. (*Id.* ¶¶ 8-9.) *See generally Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving settlement in TCPA class action using reverse lookup to locate class members). Angeion also performed a Phone Number validation of the Class Member's fax numbers, which returned 931 active numbers. (*Id.* ¶ 10.) Next, Angeion successfully transmitted a revised version of the Long Form Notice and Claim Form to 820 of those 931 fax numbers. The faxed notice alone, not counting the 206 Class Member reached by

direct mail, exceeded the 70% reach generally considered reasonable. Federal Judicial Ctr., Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide 3 (2010) (notice plan reaching at least 70% of class is reasonable).

Angeion published a Settlement Website in April 2021 and included the key documents. (Lechner Decl. ¶ 12.) Accordingly, Settlement Class Members had sufficient time to opt out of the settlement or object but none have elected to do so. *Cf. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (31 days is more than sufficient, as Class as whole had notice adequate to flush out whatever objections might reasonably be related to settlement) (citing *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which was mailed 26 days before deadline for opting out of settlement)).

This notice program—centered on direct-mail notice, faxed notice, and even follow-up telephone calls by Class Counsel—was designed to reach the largest number of Settlement Class Members possible. The concurrent dissemination of the Long Form Class Notice on the Settlement Website, combined with the Class Notice and a toll-free telephone hotline, satisfied due process and constituted the best notice practicable under the circumstances.

### 7. **$500 per valid claim is an exceptional outcome**

Although it is well-settled that a settlement may be acceptable even if it amounts to only a small percentage of the potential recovery that might be available to the class at trial,[2] the Settlement nonetheless represents an unusually high per-person recovery for a TCPA case, given that the maximum statutory damages for a non-knowing or non-willful violation is only $500. Most TCPA settlements pay far less to each claiming class member:

---

[2] *National Rural Tel. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting well-settled law that proposed settlement may be acceptable even though it amounts to only fraction of potential recovery); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of maximum potential recovery).

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Robles v. Lucky Brand Dungarees, Inc.*, No. 3:10-cv-04846 (N.D. Ca.) | 216,000 | $9.9 Million | $100 maximum |
| *Adams v. AllianceOne, Inc.,* No. 08-cv-0248 (S.D. Ca.) | 5.63 Million | $9 Million | $40 maximum |
| *Hovila v. Tween Brands, Inc.*, No. 09-cv-00491-RSL (W.D. Wa.) | 100,000 | $5.33 Million Max | $20 Cash or $45 Gift Certificate |
| *Clark v. Payless Shoesource, Inc.*, No. 09-cv-00915-JCC (W.D. Wa.) | 8 Million | $6.25 Million | $25 Gift Certificate |
| *Bellows v. NCO Fin.*, No. 07-cv-1413-W (AJB) (S.D. Ca.) | Unknown, but in thousands | $950,000 | $70 |
| *Lemieux v. Global Credit & Collection*, No. 08-cv-1012-IEG(POR) (S.D. Ca.) | 27,844 | $505,000 | $70 |

A TCPA settlement whereby class members receive checks for even a fraction of the $500 anticipated here is rare indeed.

**V.    CONCLUSION**

For all the foregoing reasons, Plaintiff requests that the Court

A.    Grant final approval of the proposed settlement;

B.